# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

MARTIN GALLEGOS,

     Plaintiff,

vs.                                     No. CIV 16-127 JB/WPL

BERNALILLO COUNTY BOARD OF
COUNTY COMMISSIONERS; BERNALILLO
COUNTY DETENTION CENTER; NEW
MEXICO DEPARTMENT OF
CORRECTIONS, and
JOHN DOES 1 through 5,

     Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendant Bernalillo County Board of County Commissioners' ("Bernalillo County") Motion to Dismiss, filed January 6, 2017 (Doc. 45)("Motion"). The Court held a hearing on June 2, 2017. The primary issues are: (i) whether the Defendant Bernalillo County Board of County Commissioners' Motion under rule 12(b)(6) of the Federal Rules of Civil Procedure should be converted into one for summary judgment, because Bernalillo County attached documents to its Motion outside of the pleadings; (ii) whether Bernalillo County enjoys quasi-judicial immunity from damages, because of its reliance on court orders; (iii) whether Bernalillo County is liable for Plaintiff Martin Gallegos' federal constitutional claim of deliberate indifference under 42 U.S.C. § 1983; (iv) whether Gallegos met the notice requirement under the New Mexico Tort Claims Act ("NMTCA") by giving Bernalillo County either written or actual notice of his claims; and (v) whether there is a waiver of immunity under the NMTCA for claims against Bernalillo County. The Court concludes that: (i) Bernalillo County's Motion should not be converted into one for summary judgment, because its

attached documents fit an exception to the rule that the Court may only consider the pleadings; (ii) Bernalillo County does not enjoy quasi-judicial immunity from damages, because that doctrine applies to people, not counties; (iii) Bernalillo County is not liable for Gallegos' federal constitutional claims, because Bernalillo County is not vicariously liable under § 1983; and (iv) Gallegos did not meet the NMTCA notice requirement, because Bernalillo County did not have written or actual notice of Gallegos' claims. Because the notice requirement is jurisdictional, the Court will not address whether there is a waiver of immunity. Accordingly, the Court grants the Motion to Dismiss.

## FACTUAL BACKGROUND

The Court draws its facts from Gallegos' Amended Complaint, filed February 1, 2016, in Gallegos v. Bernalillo Cty. Bd. of Comm'rs, No. CIV 15-6829 (Second Judicial District Court, County of Bernalillo, State of New Mexico), filed in federal court February 22, 2016 (D.N.M. Doc. 1-2). While the Court does not adopt Gallegos' factual allegations, the Court nonetheless accepts them as true for the limited purpose of deciding the Motion. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)("Iqbal")(clarifying the "tenet that a court must accept as true all of the [factual] allegations contained in a complaint")(alteration added)(citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)); Archuleta v. Wagner, 523 F.3d 1278, 1283 (10th Cir. 2008)(concluding that, in the motion to dismiss posture, a court must "accept as true all well-pleaded facts, as distinguished from conclusory allegations").

With that understanding of the allegations, Gallegos is a prisoner at Roswell Correctional Facility in Chaves County, New Mexico. See Amended Complaint ¶ 1, at 1. On or about November 6, 2014, the Second Judicial District Court, County of Bernalillo, State of New Mexico, issued an order remanding Gallegos to the Bernalillo County Metropolitan Detention Center's custody ("BCMDC"). See Amended Complaint ¶ 5, at 2. This order was to remain in

effect for six weeks, while Gallegos participated in a methadone program at BCMDC "to decrease his level of dependence so that . . . Gallegos would not incur life endangering withdrawals symptoms."  Amended Complaint ¶ 5, at 2.  (Gallegos subsequently refers to this order as a titration[1] order.  See Plaintiff's Response to Defendant Bernalillo County Board of Commissioners Motion to Dismiss at 1, filed January 30, 2017 (Doc. 52)("Response")).  Approximately six days after the state court remanded Gallegos to BCMDC's custody, he was transferred to Defendant New Mexico Department of Corrections.  See Amended Complaint ¶ 6-7, at 2.  BCMDC and the New Mexico Corrections Department ignored the remand order to BCMDC.  See Amended Complaint ¶¶ 6-7, at 2.  Defendants John Does one through five are employees of either the New Mexico Corrections Department or BCMDC, ignored the remand order, and acted with "deliberate indifference" by doing so.  Amended Complaint ¶¶ 12, 15, 16, at 3.  At the Central New Mexico Correctional Facility, Gallegos "suffered life threatening withdrawal symptoms for almost two (2) months."  Amended Complaint ¶ 7, at 2.

## PROCEDURAL BACKGROUND

Gallegos filed this lawsuit in state district court on August 27, 2015.  See Complaint, Gallegos v. Bernalillo Cnty. Bd. of Comm'rs, No. CIV 15-06829, (Tort)(filed in Second Judicial District Court, County of Bernalillo, State of New Mexico August 27, 2015), filed in federal court February 22, 2016 (Doc. 1-1).  In the Complaint, Gallegos asserts claims against Bernalillo County, BCMDC, the New Mexico Corrections Department, and John Does 1 through 5, for a violation of § 41-4-12 of the NMTCA.  See Complaint ¶ 1, at 1.  Gallegos then filed the Amended Complaint, adding a federal claim.  See Amended Complaint ¶¶ 1-19, at 1-4.  In the Amended Complaint, Gallegos asserts claims against Bernalillo County, BCMDC, the New

---

[1]In medicine, dose titration is a "stepwise adjustment of doses until a desired level of effect is reached."  "Dosing," Wikipedia, https://en.wikipedia.org/wiki/Dosing (last viewed September 22, 2017).

Mexico Corrections Department, and John Does 1 through 5, for (i) violations of NMTCA § 41-4-12, see Amended Complaint ¶¶ 8-17, at 2-4; and (ii) violations of Gallegos' rights guaranteed under the Eighth and Fourteenth Amendments to the Constitution of the United States of America, see Amended Complaint ¶ 18, at 4. Gallegos seeks "compensatory damages in a yet undetermined amount jointly and severally against all Defendants," and attorney fees. Amended Complaint ¶ 20, at 4. Within thirty days of receipt of the Amended Complaint, Bernalillo County and BCMDC removed the lawsuit to federal court pursuant to 28 U.S.C. § 1446(b)(3). See Notice of Removal at 1, filed February 22, 2016 (Doc. 1).

**1.      The Motion.**

Bernalillo County moves the Court, pursuant to rule 12(b)(6), to dismiss Gallegos' claims against Bernalillo County. See Motion at 1. In the Motion, Bernalillo County argues that it enjoys "absolute quasi-judicial immunity for [its] reliance on a facially valid court order." Motion at 4. Bernalillo County asserts that "'official[s] charged with the duty of executing a facially valid court order enjoy absolute immunity from liability for damages in a suit challenging conduct prescribed by that order.'" Motion at 4 (quoting Turney v. O'Toole, 898 F.2d 1470, 1472 (10th Cir. 1990)("Turney")). Bernalillo County explains that "'it is simply unfair to spare the judges [who have absolute judicial immunity and] who give orders while punishing the officers who obey them.'" Motion at 4 (quoting Valdez v. City & Cty. Of Denver, 878 F.2d 1285, 1289 (10th Cir. 1989)("Valdez")). Bernalillo County then explains that a state district court issued a series of orders that sentenced Gallegos to the New Mexico Corrections Department's custody. See Motion at 5-6. Bernalillo County attached these orders to its Motion. See Motion at 5-6. Bernalillo County then argues that it transferred Gallegos to the New Mexico Corrections Department "in accordance with the Orders." Motion at 6. Further, Bernalillo County argues, "[a]ll of these Orders were approved and signed by Plaintiff's court-appointed

attorney(s)." Motion at 6.

Bernalillo County then argues that the state district court's orders were facially valid. See Motion at 6. Specifically, it asserts that, "'even assuming that an order is infirm as a matter of state law, it may be facially valid, as 'facially valid' does not mean 'lawful,' and erroneous orders can be valid.'" Motion at 6 (quoting Turney, 898 F.2d at 1473). Bernalillo County contends that "there is no question that the Orders . . . were in fact valid." Motion at 6. Bernalillo County then notes that "'[t]he proper procedure for a party who wishes to contest the legality of a court order enforcing a judgment is to appeal that order and the underlying judgment, not to sue the official responsible for its execution.'" Motion at 7 (quoting Valdez, 878 F.2d at 1289-90). Bernalillo County asserts that Gallegos did not appeal the orders at issue, which "would have been the appropriate means of relief" rather than suing Bernalillo County. Motion at 7.

Bernalillo County next argues that "there is no vicarious liability for Plaintiff's constitutional claims against [Bernalillo County]." Motion at 7. Bernalillo County asserts that 42 U.S.C. § 1983 "'rejects the tort principle of respondeat superior and does not subject [governmental agencies] to vicarious liability for the acts of their employees.'" Motion at 7 (quoting Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690-95 (1978)). Specifically, Bernalillo County contends, "'[b]ecause vicarious liability is inapplicable to . . . §1983 suits, a plaintiff must plead each government-official defendant, through the official's own individual actions, has violated the Constitution.'" Motion at 8 (quoting Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009)). Accordingly, Bernalillo County concludes that the "Plaintiff cannot bring claims against [Bernalillo County] . . . solely because they supervised . . . detention officers under a vicarious liability theory." Motion at 8.

Bernalillo County further argues that "supervisors are not liable under 42 U.S.C. § 1983 unless there is 'an affirmative link . . . between the constitutional deprivation and either the supervisor's personal participation, [] exercise of control or direction, or [] failure to supervise.'" Motion at 9 (quoting Gallagher v. Shelton, 587 F.3d 1063, 1069 (10th Cir. 2009)(citation omitted)). Bernalillo, the County argues, Gallegos does not plead "any alleged unconstitutional or illegal policies, nor violations of a specific Bernalillo County policy." Motion at 9. According to Bernalillo County, Gallegos' factual allegations are "instead solely based upon the alleged conduct of unidentified [guards]." Motion at 9. Accordingly, Bernalillo County concludes that the Court should dismiss Gallegos' § 1983 claims against Bernalillo County. Motion at 15.

Bernalillo County next argues that the Court should dismiss Gallegos' tort claims because no waiver of immunity applies under the NMTCA. See Motion at 10. Bernalillo County posits that "[s]ection 41-4-4 of the Tort Claims Act grants a governmental entity and any public employee acting within the scope of duty immunity from liability for any tort except as waived elsewhere in the [NM]TCA." Motion at 10. Bernalillo County continues that "there is no waiver of tort immunity for negligence, standing alone." Motion at 10 (citing Lessen v. City of Albuquerque, 2008-NMCA-085, 187, ¶ 35, 187 P.3d 179, 186). Bernalillo County thus concludes that, "to the extent Plaintiff is making a stand-alone claim of 'negligence' against [Bernalillo County], the holding in Lessen dictates there is no waiver of immunity for a general negligence claim and any such claim should be dismissed." Motion at 11.

Bernalillo County adds that the Court should also dismiss any claim for "medical negligence." Motion at 11. Bernalillo County reasons that "there is no specific waiver of immunity to be found in the [NM]TCA for medical negligence that would apply to these

Defendants." Motion at 11. Bernalillo County accordingly concludes that the Court should dismiss any claims against it for negligence or "medical negligence." Motion at 12.

Finally, Bernalillo County argues that the Court lacks jurisdiction over the NMTCA claims, because the "Plaintiff failed to provide notice of his claims to [Bernalillo County], as required under the [NMTCA]." Motion at 12. Specifically, Bernalillo County asserts that, under the NMTCA, "all potential claimants must submit written notice to the local governmental entity within ninety days after the occurrence giving rise to the claim(s) 'for which immunity has been waived under the Tort Claims Act.'" Motion at 12 (quoting N.M. Stat. Ann § 41-4-16(A)). Bernalillo County argues that "it is undisputed that Plaintiff failed to provide written notice to [Bernalillo County] within ninety days after the occurrence giving rise to the claim(s)." Motion at 12.

Bernalillo County then contends that "'no court shall have jurisdiction to consider any suit or action against the state or any local public body unless notice has been given as required by this section, or unless the governmental entity had actual notice of the occurrence.'" Motion at 13 (quoting N.M. Stat. Ann. § 41-4-16(B)). Bernalillo County explains that, because Gallegos concedes that he did not provide written notice to Bernalillo County, the Court has jurisdiction over the tort claims only if Bernalillo County had actual notice of them. See Motion at 14. Bernalillo County contends that it did not have actual notice. See Motion at 14. Specifically, Bernalillo County argues that, even if Gallegos showed BCMDC employees a copy of one of the court orders and told them "he was going to speak to his attorney about it, these actions, in and of themselves are insufficient as a matter of law to alert [Bernalillo County] of the likelihood of a lawsuit." Motion at 14 ((citing <u>Herald v. Bd. of Regents of Univ. of New Mexico</u>, 2015-NMCA-104, ¶ 51, 357 P.3d 438, 449; <u>Dutton v. McKinley Cty. Bd. of Comm'rs</u>, 1991-NMCA-130, ¶ 9,

822 P.2d 1134, 1136("Dutton"))(stating that actual knowledge of a plaintiff's alleged injury is not equivalent to "actual notice" of the likelihood of ensuing litigation and is therefore insufficient to comply with N.M. Stat. Ann. § 41-4-16)). Bernalillo County concludes that, because Gallegos did not comply with the NMTCA notice provision, the Court has no jurisdiction to consider Gallegos' NMTCA claims against Bernalillo County. Motion at 14-15.

For these reasons, Bernalillo County argues, the Court should dismiss Gallegos' claims against Bernalillo County. See Motion at 15. Bernalillo County concedes that, if the Court grants the Motion, "it would have no impact on Plaintiff's claims against remaining Defendant New Mexico Department of Corrections." Motion at 15.

## 2. **The Response**.

Gallegos responds to the Motion. See Response at 1. In the Response, Gallegos briefly asserts that, because the Motion contains attachments outside of the pleadings, it is not a motion to dismiss, but rather, a motion for summary judgment. Response at 6. Gallegos also attaches exhibits, including depositions, to his Response. See Response at 2-5.

Gallegos does not directly respond to the legal aspects of the Motion's quasi-judicial immunity argument. See Response at 6-9. Rather, Gallegos gives an extensive discussion of the attached deposition transcripts, and argues that "this is not a case of Defendants relying on a facially valid order when none of the actual participants raise such a claim and the supervisors involved all indicate what should happen if someone raises those claims." Motion at 9. Specifically, he notes that "Mr. Gallegos claims he complained about the titration order not being followed and showed the order to a number of parties including . . . corrections officers, who all denied that he did that." Response at 7. He then discusses the deposition of the County Records Supervisor, Alexis Iverson, who indicated that corrections officers should not ignore the titration order: "[W]hat they were supposed to do was bring it to records and she said she then would

recommend they leave him until they can get further clearance and not transfer him." Response at 7. From these facts, Gallegos concludes "this is not a case of Defendants relying on a facially valid order when none of the actual participants raise such a claim and the supervisors involved all indicate what should happen if someone raises those claims." Response at 9.

Regarding the Motion's vicarious liability arguments, Gallegos does not directly respond to the Motion's legal arguments, but, rather, explains that Gallegos "has been seeking to name specific supervisors and parties (John Does 1-5) involved in this case and people who actually participated in the denial of Plaintiff's rights." Response at 9. Gallegos asserts that "the Plaintiff is only now in a position to file an amended complaint and actually name the specific supervisors and parties who are or could be liable under § 1983." Response at 10. Gallegos concludes that "the court should allow additional amendments to add specific parties since these depositions were taken and transcribed less than a week ago." Response at 10.

Responding to the Motion's assertion of immunity under the NMTCA, Gallegos argues that "[t]he New Mexico Supreme Court has interpreted the phrase 'operation and maintenance' in NMSA 41-4-6 broadly and it is not limited in its applicability strictly to defects in a physical building." Response at 10 (citing Upton v. Clovis Mun. Sch. Dist., 2005-NMCA-085, ¶ 6, 115 P.3d 795, 796-97, rev'd 2006-NMSC-040, 141 P.3d 1259). Gallegos asserts that this case involves a methadone maintenance program covering approximately 141 individuals, and that the case involves the operation of BCMDC, a building. Response at 11. Gallegos concludes that these facts come within a waiver of sovereign immunity. See Response at 11.

Finally, addressing the Motion's notice defense, Gallegos contends that he provided the required notice under the NMTCA. See Response at 11. Gallegos argues that he "showed a court order to officers Kline and King indicating that he was being wrongfully taken away and

subject to life threatening withdrawal symptoms." Response at 11. Gallegos concludes that because the notice "involved a court order it would be impossible for anyone to think that no litigation would ensue when a court order was violated." Response at 11-12. Gallegos further contends that "the notice requirement under the [NM]TCA was certainly met when the Plaintiff attempted to reasonably alert the agency of the necessity of investigating the merits of a potential claim against it." Response at 12. Gallegos also notes that he "contacted his attorney and that attorney called not only the Department of Corrections Chief Legal Officer [but] also called 'medical' at [BCMDC]." Response at 12. From these facts, Gallegos concludes that "it would be nonsensical when an attorney called [the defendant] with regard to this issue that [the defendant] would not believe litigation was intended." Response at 12. Finally, Gallegos also contends that he "did send a letter within the 90 day period, a written tort claim notice to the State Risk Management," to fulfill the NMTCA notice requirement. Response at 12. Gallegos thus concludes that the Court should deny the Motion to Dismiss. See Response at 12. He also asks the Court to allow him to file an amended complaint "naming specific individuals to proceed with his § 1983 claim." Response at 12.

     **3.**     **The Reply.**

     Bernalillo County replied to Gallegos' arguments. See Reply to Plaintiff's Response to Defendant Bernalillo County Board of Commissioners' Motion to Dismiss at 1, filed February 3, 2017 (Doc. 54)("Reply"). Bernalillo County argues that the Response's attempt to convert the Motion into one for summary judgment is misplaced. See Reply at 1-2. Specifically, Bernalillo County posits that, "'[w]hen ruling on a 12(b)(6) motion, the district court must examine only the plaintiff's complaint [and] determine if the complaint alone is sufficient to state a claim; the district court cannot review matters outside of the complaint.'" Reply at 2 (quoting Carter v.

Daniels, 91 F. App'x 83, 85 (10th Cir. 2004)(unpublished)).[2]  Bernalillo County then notes that

three exceptions to this rule exist.  See Reply at 2.  According to Bernalillo County, the first

exception is "documents that the complaint incorporates by reference."  Reply at 2 (citing

Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007)).  The second exception,

according to Bernalillo County, is "'documents referred to in the complaint if the documents are

central to the plaintiff's claim and the parties do not dispute the documents' authenticity.'"

Reply at 2 (quoting Jacobsen v. Deseret Book Co., 287 F.3d 936, 941 (10th Cir. 2002)).  Finally,

according to Bernalillo County, the third exception is documents subject to judicial notice.  See

Reply at 2 n.1 (citing Rose v. Utah State Bar, 471 F. App'x 818, 820 (10th Cir.

2012)(unpublished).  Bernalillo County argues that all of the exhibits attached to its Motion are

state district court orders, and are central to Gallegos' claims, and that no dispute exists

regarding their authenticity.  See Reply at 2.  Bernalillo County therefore concludes that its

exhibits do not convert its Motion to Dismiss into one for summary judgment.  See Reply at 2.

---

[2]Carter v. Daniels is an unpublished opinion, but the Court can rely on an unpublished
opinion from the United States Court of Appeals for The Tenth Circuit to the extent its reasoned
analysis is persuasive in the case before it.  See 10th Cir. R. 32.1(A) ("Unpublished opinions are
not precedential, but may be cited for their persuasive value.").  The Tenth Circuit has stated:

> In this circuit, unpublished orders are not binding precedent, . . . and we have
> generally determined that citation to unpublished opinions is not favored.
> However, if an unpublished opinion or order and judgment has persuasive value
> with respect to a material issue in a case and would assist the court in its
> disposition, we allow a citation to that decision.

United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005)(citations omitted).  The Court
concludes that Carter v. Daniels, Gossett v. Barnhart, 139 F. App'x 24 (10th Cir.
2005)(unpublished), Nard v. City of Okla. City, 153 F. App'x 529 (10th Cir. 2005)(unpublished),
Rose v. Utah State Bar, 471 F. App'x 818 (10th Cir. 2012)(unpublished), Jackson v. New
Mexico Pub. Def's. Office, 361 F.App'x 958 (10th Cir. 2010)(unpublished), and Douglas v.
Norton, 167 F. App'x 698 (10th Cir. 2006)(unpublished), have persuasive value with respect to
material issues, and will assist the Court in its preparation of this Memorandum Opinion and
Order.

- 11 -

The County also briefly asks the Court to disregard the exhibits attached to Gallegos' Response, arguing that none of Gallegos' exhibits fit one of the exceptions to the rule that the Court "may not look at documents outside of the Complaint or Amended Complaint when deciding a motion to dismiss." Reply at 3.

Regarding quasi-judicial immunity, Bernalillo County argues that Gallegos does not dispute Bernalillo County's immunity, and that the "Plaintiff fails to cite a single legal authority as to why these Defendants would not be entitled to absolute quasi-judicial immunity." Reply at 3. Bernalillo County then reasserts its quasi-judicial immunity arguments. Reply at 3. Specifically, Bernalillo County argues that, for it to be immune, "'the judge issuing the disputed order must be immune from liability in his or her own right, the officials executing the order must act within the scope of their jurisdiction, and the officials must only act as prescribed by the order in question.'" Reply at 3 (quoting Moss v. Kopp, 559 F.3d 1155, 1163 (10th Cir. 2009)("Moss")). According to Bernalillo County, "[t]he order must be 'facially valid.'" Reply at 3 (quoting Moss, 559 F.3d at 1164). Bernalillo County then asserts that it performed its transfer of Gallegos to the New Mexico Corrections Department in accordance with facially valid court orders. Reply at 4. Bernalillo County also notes that Gallegos does not contest whether the court orders were facially valid. See Reply at 4. Bernalillo County concludes that it is thus entitled to quasi-judicial immunity. See Reply at 5.

Next, Bernalillo County argues that "there is no legal basis for Plaintiff's constitutional claims against [Bernalillo County]." Reply at 5. Specifically, it argues that a government agency "'may be held liable under § 1983 only for its own unconstitutional or illegal policies and not for the tortious acts of its employees.'" Reply at 5 (quoting Lopez v. LeMaster, 172 F.3d 756, 762-63 (10th Cir. 1999)). Bernalillo County concludes that, because Gallegos "does not

plead any alleged unconstitutional or illegal policies, nor violations of a specific Bernalillo County policy," the County cannot be liable under § 1983. Reply at 5.

Bernalillo County next reasserts its argument that no waiver of immunity under the NMTCA exists for Gallegos' state law tort claims. See Reply at 6. It argues that the "Plaintiff's assertion of § 41-4-6 as the basis for the alleged waiver of immunity is unsupported." Reply at 6. Bernalillo County posits that Gallegos' reliance on Espinoza v. Town of Taos, 1995-NMSC-070, 905 P.2d 718, "for the proposition that § 41-4-6 waives liability in the instant matter" is misplaced. Reply at 6. Specifically, Bernalillo County asserts that, because Espinoza v. Town of Taos concluded that there was no waiver of tort immunity in that case, the case does not support Gallegos' claim. See Reply at 7 (citing Espinoza v. Town of Taos, 1995-NMSC-070, ¶ 16, 905 P.2d at 722).

Bernalillo County then argues that Gallegos' reliance on Upton v. Clovis Mun. Sch. Dist. is inappropriate. See Reply at 7 (citing Upton v. Clovis Mun. Sch. Dist., 2005-NMCA-085, 115 P.3d 795). Instead, the County contends that this case is more analogous to Lessen v. City Albuquerque. Reply at 7 (citing Lessen v. City of Albuquerque, 2008-NMCA-085, ¶ 1, 187 P.3d 179, 180)("Lessen"). Specifically, the County argues that Lessen involved "'a single discrete administrative decision affecting only a single person, as opposed to a dangerous condition affecting the general public.'" Reply at 7 (quoting Lessen, 2008-NMCA-085, ¶ 27, 187 P.3d at 184). According to Bernalillo County, because of these facts, "[t]he New Mexico Court of Appeals rejected the Lessen plaintiff's assertion of § 41-4-6 as a basis for waiver of liability." Reply at 8 (citing Lessen, 2008-NMCA-085, ¶ 27, 187 P.3d at 184-85). According to Bernalillo County, because this case affects only Gallegos and not "all similarly situated inmates," the reasoning of Lessen should apply. Reply at 8. For this reason, Bernalillo County concludes that

Gallegos does not have a claim under § 41-4-6.  See Reply at 8.

Bernalillo County also briefly notes that, "by way of omission, Plaintiff concedes in his Response that he is not making a TCA claim based upon alleged 'medical negligence' against these defendants under NMSA §§ 41-4-9 and 41-4-10."  Reply at 8.  Bernalillo County also contends that, regardless, "those provisions would not apply to [Bernalillo County] because [it] is not a 'medical facilit[y]' or [a] 'health care provider[].'"  Reply at 8.  Bernalillo County concludes that the Court should dismiss Gallegos' NMTCA claims, because no wavier of immunity exists.

Finally, Bernalillo County responds to Gallegos' "actual notice" arguments.  Reply at 8.  Specifically, Bernalillo County alleges that Gallegos' pleadings regarding actual notice do not meet the pleading threshold under Ashcroft v. Iqbal, 556 U.S. 662 (2009) and Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007).  See Reply at 9.  Bernalillo County contends that Gallegos does not plead with whom he communicated his notice "nor any other circumstances of the alleged verbal statement(s)."  Reply at 8.  Bernalillo County also asserts that Gallegos "fails to plead that he communicated to [Bernalillo County] that there existed a likelihood that litigation may ensue."  Reply at 8 (citing City of Las Cruces v. Garcia, 1984-NMSC-106, ¶ 5, 690 P.2d 1019, 1021).  Because of Gallegos' alleged lack of actual notice, Bernalillo County concludes that the Court should dismiss Gallegos' NMTCA claims.  See Reply at 9.  In conclusion, Bernalillo County asks the Court to grant the Motion to Dismiss.  See Reply at 9.

4.      **The Hearing.**

The Court held a motion hearing on June 2, 2017.  See Draft Transcript of Motion Proceeding at 1:9-13 (taken June 2, 2017)(Court)("Tr.").[3]  The Court began by stating: "It

_____

[3]The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited versions.  Any final transcript may contain slightly different page and/or line numbers.

doesn't seem to me that there is a waiver of the New Mexico sovereign immunity of the Tort Claims Act . . . for the County." Tr. at 3:2-4 (Court). The Court added: "I'm inclined to grant the motion." Tr. at 5:10 (Court).

Bernalillo County began by implying that it did not want its Motion to Dismiss converted into a Motion for Summary Judgment. See Tr. at 5:23-24 (Quiñones). The Court stated that, "if you don't want it converted, I think [that] sort of should be able to control." Tr. at 6:1-2 (Court). The Court continued that it would "probably not consider all the materials that everybody had submitted. Although I didn't have a problem with the ones that you submitted." Tr. at 6:7-10 (Court).

Regarding quasi-judicial immunity, the County noted that its exhibits "are facially valid court orders. There is no question about that, plaintiff does not contest that." Tr. at 7:16-18 (Quiñones). Bernalillo County continued: "[A]nd they were all signed by the same district judge and also signed by Mr. Gallegos' public defender attorneys." Tr. 7:18-20 (Quiñones). Bernalillo County added: "Plaintiff is arguing a state official can and should pick and choose which Court orders to follow." Tr. at 7:23-25 (Quiñones). Instead, Bernalillo County argued: "Proper procedure for contesting the legality of a Court order . . . would be to appeal that order." Tr. at 10:5-7 (Quiñones).

Gallegos began his argument. See Tr. at 18:22 (Lawless). Regarding the negligence claim under § 41-4-6, Gallegos argued that "negligence comes in here, Judge, because assuming I have a policy in place and I'm a corrections officer and the policy is designed to cover a large number of people who are actually at MDC, it protects all inmates that are similarly situated." Tr. at 29:9-14 (Lawless). Gallegos continued: "[B]ut if I negligently fail to follow the policy that seems to me to be a violation of the operation and maintenance clause, because we're talking

about negligence." Tr. at 29:14-17 (Lawless). The Court then restated that it was inclined to grant the Motion to Dismiss. <u>See</u> Tr. at 30:14-15 (Court).

## <u>LAW REGARDING RULE(12)(b)(6)</u>

Rule 12(b)(6) authorizes a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." <u>Mobley v. McCormick</u>, 40 F.3d 337, 340 (10th Cir. 1994). A complaint's sufficiency is a question of law, and, when considering a rule 12(b)(6) motion, a court must accept as true all well-pleaded factual allegations in the complaint, view those allegations in the light most favorable to the non-moving party, and draw all reasonable inferences in the plaintiff's favor. <u>See</u> <u>Tellabs, Inc. v. Makor Issues & Rights, Ltd.</u>, 551 U.S. 308, 322 (2007)("[O]nly if a reasonable person could not draw . . . an inference [of plausibility] from the alleged facts would the defendant prevail on a motion to dismiss."); <u>Smith v. United States</u>, 561 F.3d 1090, 1098 (10th Cir. 2009)("[F]or purposes of resolving a Rule 12(b)(6) motion, we accept as true all well-pleaded factual allegations in a complaint and view these allegations in the light most favorable to the plaintiff.")(quoting <u>Moore v. Guthrie</u>, 438 F.3d 1036, 1039 (10th Cir. 2006)).

A complaint need not set forth detailed factual allegations, yet a "pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action" is insufficient. <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009)(citing <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Ashcroft v. Iqbal</u>, 556 U.S. at 678. "Factual allegations must be enough to raise a right to relief above the speculative level, on the

assumption that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atl. Corp v. Twombly, 550 U.S. at 555 (citation omitted).

To survive a motion to dismiss, a plaintiff's complaint must contain sufficient facts that, if assumed to be true, state a claim to relief that is plausible on its face. See Bell Atl. Corp. v. Twombly, 550 U.S. at 570; Mink v. Knox, 613 F.3d 995, 1000 (10th Cir. 2010). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. at 556). "Thus, the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complainant must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." Ridge at Red Hawk, LLC v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007)(emphasis omitted). The United States Court of Appeals for the Tenth Circuit stated:

> "[P]lausibility" in this context must refer to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs "have not nudged their claims across the line from conceivable to plausible." The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief.

Robbins v. Oklahoma, 519 F.3d 1242, 1247 (10th Cir. 2008)(quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 570)(internal citations omitted).

## LAW REGARDING RULE 12(b)(1)

"Federal courts are courts of limited jurisdiction; they are empowered to hear only those cases authorized and defined in the Constitution which have been entrusted to them under a jurisdictional grant by Congress." Henry v. Office of Thrift Supervision, 43 F.3d 507, 511 (10th Cir. 1994)(citations omitted). A plaintiff generally bears the burden of demonstrating the court's

jurisdiction to hear his or her claims.  See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83,

104 (1998)("[T]he party invoking federal jurisdiction bears the burden of establishing its

existence.").  Rule 12(b)(1) allows a party to raise the defense of the court's "lack of jurisdiction

over the subject matter" by motion.  Fed. R. Civ. P. 12(b)(1).  The Tenth Circuit has held that

motions to dismiss for lack of subject-matter jurisdiction "generally take one of two forms: (1) a

facial attack on the sufficiency of the complaint's allegations as to subject-matter jurisdiction; or

(2) a challenge to the actual facts upon which subject matter jurisdiction is based."  Ruiz v.

McDonnell, 299 F .3d 1173, 1180 (10th Cir. 2002).

> On a facial attack, a plaintiff is afforded safeguards similar to those
> provided in opposing a rule 12(b)(6) motion: the court must consider the
> complaint's allegations to be true.  See Ruiz v. McDonnell, 299 F.3d at 1180;
> Williamson v. Tucker, 645 F.2d 404, 412 (5th Cir. 1981).  But when the attack is
> aimed at the jurisdictional facts themselves, a district court may not presume the
> truthfulness of those allegations.  A court has wide discretion to allow affidavits,
> other documents, and a limited evidentiary hearing to resolve disputed
> jurisdictional facts under Rule 12(b)(1).  In such instances, a court's reference to
> evidence outside the pleadings does not convert the motion to a Rule 56 motion.

Hill v. Vanderbilt Capital Advisors, LLC, No. CIV 10-0133 JB/KBM, 2011 WL 6013025, at *8

(D.N.M. Sept. 30, 2011)(Browning, J.)(quoting Alto Eldorado Partners v. City of Santa Fe, 2009

WL 1312856, at *8-9).  The United States Court of Appeals for the Fifth Circuit has stated:

> [T]he trial court may proceed as it never could under 12(b)(6) or Fed. R. Civ. P.
> 56.  Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction --
> its very power to hear the case -- there is substantial authority that the trial court is
> free to weigh the evidence and satisfy itself as to the existence of its power to hear
> the case.  In short, no presumptive truthfulness attaches to plaintiff's allegations,
> and the existence of disputed material facts will not preclude the trial court from
> evaluating for itself the merits of jurisdictional claims.

Williamson v. Tucker, 645 F.2d 404, 412-13 (5th Cir. 1981)(quoting Mortensen v. First Fed.

Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977)).

When making a rule 12(b)(1) motion, a party may go beyond the allegations in the complaint to challenge the facts upon which jurisdiction depends, and may do so by relying on affidavits or other evidence properly before the court. See New Mexicans for Bill Richardson v. Gonzales, 64 F.3d 1495, 1499 (10th Cir. 1995); Holt v. United States, 46 F.3d 1000, 1003 (10th Cir. 1995). In those instances, a court's reference to evidence outside the pleadings does not necessarily convert the motion to a rule 56 motion for summary judgment. See Holt v. United States, 46 F.3d at 1003 (citing Wheeler v. Hurdman, 825 F.2d 257, 259 n.5 (10th Cir. 1987)). Where, however, the court determines that jurisdictional issues raised in a rule 12(b)(1) motion are intertwined with the case's merits, the court should resolve the motion under either rule 12(b)(6) of the Federal Rules of Civil Procedure or rule 56 of the Federal Rules of Civil Procedure. See Franklin Sav. Corp. v. United States, 180 F.3d 1124, 1129 (10th Cir. 1999); Tippett v. United States, 108 F.3d 1194, 1196 (10th Cir. 1997). "When deciding whether jurisdiction is intertwined with the merits of a particular dispute, 'the underlying issue is whether resolution of the jurisdictional question requires resolution of an aspect of the substantive claim.'" Davis ex rel. Davis v. United States, 343 F.3d 1282, 1296 (10th Cir. 2003)(quoting Sizova v. Nat'l Inst. of Standards & Tech., 282 F.3d 1320, 1324 (10th Cir. 2002)).

## LAW REGARDING DOCUMENTS OUTSIDE THE PLEADINGS ON A MOTION TO DISMISS

Generally, the sufficiency of a complaint must rest on its contents alone. See Casanova v. Ulibarri, 595 F.3d 1120, 1125 (10th Cir. 2010); Gossett v. Barnhart, 139 F. App'x 24, 24 (10th Cir. 2005)(unpublished)("In ruling on a motion to dismiss, the district court is limited to the facts pled in the complaint."). Emphasizing this point, the Tenth Circuit, in Carter v. Daniels, 91 F. App'x 83 (10th Cir. 2004)(unpublished), stated: "When ruling on a Rule 12(b)(6) motion, the district court must examine only the plaintiff's complaint. The district court must determine if

the complaint alone is sufficient to state a claim; the district court cannot review matters outside of the complaint." 91 F. App'x at 85. There are three limited exceptions to this general principle: (i) documents that the complaint incorporates by reference, see Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007); (ii) "documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity," Jacobsen v. Deseret Book Co., 287 F.3d at 941; and (iii) "matters of which a court may take judicial notice," Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. at 322. "[T]he court is permitted to take judicial notice of its own files and records, as well as facts which are a matter of public record." Van Woudenberg v. Gibson, 211 F.3d 560, 568 (10th Cir. 2000), abrogated on other grounds by McGregor v. Gibson, 248 F.3d 946, 955 (10th Cir. 2001). In Gee v. Pacheco, 627 F.3d 1178 (10th Cir. 2010), the defendants "supported their motion with numerous documents, and the district court cited portions of those motions in granting the [motion to dismiss]." 627 F.3d at 1186. The Tenth Circuit held that "[s]uch reliance was improper" and that, even if "the district court did not err initially in reviewing the materials, the court improperly relied on them to refute Mr. Gee's factual assertions and effectively convert the motion to one for summary judgment." Gee v. Pacheco, 627 F.3d at 1186-87. In other cases, the Tenth Circuit has emphasized that, "[b]ecause the district court considered facts outside of the complaint, however, it is clear that the district court dismissed the claim under Rule 56(c) and not Rule 12(b)(6)." Nard v. City of Okla. City, 153 F. App'x 529, 534 n.4 (10th Cir. 2005)(unpublished). In Douglas v. Norton, 167 F. App'x 698 (10th Cir. 2006)(unpublished), the Tenth Circuit addressed an untimely filed charge with the Equal Employment Opportunity Commission -- which the Court analogized to a statute of limitations -- and concluded that, because the requirement was not jurisdictional, the district court should have analyzed the

question under rule 12(b)(6), and "because the district court considered evidentiary materials outside of Douglas' complaint, it should have treated Norton's motion as a motion for summary judgment." 167 F. App'x at 704-05.

The Court has previously ruled that, when determining whether to toll a statute of limitations in an action alleging fraud and seeking subrogation from a defendant, the Court may not use interviews and letters attached to a motion to dismiss, which evidence that a plaintiff was aware of the defendant's alleged fraud before the statutory period expired, in the Court's ruling. See Great Am. Co. v. Crabtree, No. CIV 11-1129 JB/KBM, 2012 WL 3656500, at *3, **22-23 (D.N.M. Aug. 23, 2012)(Browning, J.). The Court determined that the documents did not fall within any of the Tenth Circuit's exceptions to the general rule that a complaint must rest on the sufficiency of its contents alone, as the complaint did not incorporate the documents by reference, or refer to the documents. See 2012 WL 3656500, at **22-23; Mocek v. City of Albuquerque, No. CIV 11-1009, 2013 WL 312881, at *50 (D.N.M. 2013)(Browning, J.) (refusing to consider statements that were not "central to [the Plaintiff's] claims").

On the other hand, in a securities class-action, the Court has found that a defendant's operating certification, to which plaintiffs refer in their complaint, and which is central to whether the plaintiffs' adequately alleged a loss, falls within an exception to the general rule, and the Court may consider the operating certification when ruling on the defendant's motion to dismiss without converting the motion into one for summary judgment. See Genesee Cnty Emps.' Retirement Sys. v. Thornburg Mortg. Secs. Trust 2006-3, 825 F. Supp. 2d 1082, 1150-51 (D.N.M. 2011)(Browning, J.); Mata v. Anderson, 760 F. Supp. 2d 1068, 1101 (D.N.M. 2009)(Browning, J.)(relying on documents outside of the complaint because they were "documents that a court can appropriately view as either part of the public record, or as

documents upon which the Complaint relies, and the authenticity of which is not in dispute").

## **LAW REGARDING QUASI-JUDICIAL IMMUNITY**

The Tenth Circuit has explained that government officials enjoy quasi-judicial immunity when executing facially valid court orders. See Whitesel v. Sengenberger, 222 F.3d 861, 867-70 (10th Cir. 2000)(recognizing that, "[a]lthough absolute immunity generally extends to non-judicial officers performing discretionary judicial acts, some circuits, including our own, have held that those performing ministerial acts at the direction of a judge are also entitled to absolute immunity," and holding that a pretrial service officer, who, acting as a bond commissioner, issued a Temporary Restraining Order, was entitled to qualified immunity). See also Zamora v. City of Belen, 383 F. Supp. 2d 1315, 1325 (D.N.M. 2005)(Browning, J.)("[L]aw enforcement officers are also entitled to absolute 'quasi-judicial' immunity for their actions in executing facially valid warrants, writs, and other court orders, such as bench warrants.").

> For the defendant state official to be entitled to quasi-judicial immunity, the judge issuing the disputed order must be immune from liability in his or her own right, the officials executing the order must act within the scope of their own jurisdiction, and officials must only act as prescribed by the order in question.

Moss v. Kopp, 559 F.3d 1155, 1163 (10th Cir. 2009). Another "key requirement that [the Tenth Circuit] ha[s] found necessary to the application of quasi-judicial immunity where government officials are executing court orders is the requirement that the order be 'facially valid.'" Moss v. Kopp, 559 F.3d at 1164 (alterations added)(quoting Turney, 898 F.2d 1470, 1472 (1990)(holding that officials charged with the duty of executing a facially valid court order enjoy absolute immunity)). In Moss v. Kopp, the Tenth Circuit elaborates:

> [W]e have acknowledged that even assuming that an order is infirm as a matter of state law, it may be facially valid, as "facially valid" does not mean "lawful," and erroneous orders can be valid. We explained: State officials must not be required

to act as pseudo-appellate courts scrutinizing the orders of judges, but subjecting them to liability for executing an order because the order did not measure up to statutory standards would have just that effect. Further, [t]o allow plaintiffs to bring suit any time a state agent executes a judicial order which does not fulfill every legal requirement would make the agent a lightning rod for harassing litigation aimed at judicial orders. Simple fairness requires that state officers not be called upon to answer for the legality of decisions which they are powerless to control.

We have also noted that a narrow conception of facial validity would deprive the court of most of the benefit it derives from the existence of quasi-judicial immunity for officers carrying out its orders because the unhesitating execution of court orders is essential to the court's authority and ability to function, and state officers subject to litigation might neglect to execute these orders. Even worse, a fear of bringing down litigation on the [officer executing the order] might color a court's judgment in some cases. In short, [t]he public interest demands strict adherence to judicial decrees.

Moss v. Kopp, 559 F.3d at 1165 (first alteration added, second through fourth alterations original)(internal quotation marks and citations omitted). "To force officials performing ministerial acts intimately related to the judicial process to answer in court every time a litigant believes the judge acted improperly is unacceptable. Officials must not be called upon to answer for the legality of decisions which they are powerless to control." Valdez, 878 F.2d 1285, 1288-89 (10th Cir. 1989). The Tenth Circuit explains that "[t]ension between trial judges and those officials responsible for enforcing their orders inevitably would result were there not absolute immunity for both." Valdez, 878 F.2d at 1289 (alteration added)(citing T & W Inv. Co., Inc. v. Kurtz, 588 F.2d 901, 802 (10th Cir. 1978)).

Officials employed to implement facially valid court orders could choose: They may disregard the judge's orders and face discharge, or worse yet criminal contempt, or they may fulfill their duty and risk being hauled into court. Judge Learned Hand recognized years ago that the fear of suit will "dampen the ardor of all but the most resolute, or the most irresponsible, in the unflinching discharge of their duties."

Valdez, 878 F.2d at 1289 (quoting Gregoire v. Biddle, 177 F.2d 579, 581 (2d Cir. 1949)). The Tenth Circuit accordingly concluded that "[a]bsolute immunity [for officials who execute

facially valid court orders] will ensure the public's trust and confidence in courts' ability to completely, effectively and finally adjudicate the controversies before them." Valdez, 878 F.2d at 1289. See Zamora v. City of Belen, 383 F. Supp. 2d at 1325; Rivera v. Bates, No. CIV 12-0473, 2014 WL 3421050, at *44-45(D.N.M 2014)(Browning, J.) (holding that the Defendant was entitled to quasi-judicial immunity because he enforced a facially valid court order); Reid v. Pautler, 36 F. Supp. 3d 1067, 1182 (holding that the Defendants were acting in a quasi-judicial capacity "when they enforced the facially valid court order by requiring [the Plaintiff] to submit to urine drug tests").

## LAW REGARDING 42 U.S.C. § 1983

Section 1983 of Title 42 of the United States Code provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. Section 1983 creates only the right of action; it does not create any substantive rights; substantive rights must come from the Constitution or from a federal statute. See Nelson v. Geringer, 295 F.3d 1082, 1097 (10th Cir. 2002)("[S]ection 1983 did not create any substantive rights, but merely enforces existing constitutional and federal statutory rights . . . .")(internal quotation marks, alteration, and citation omitted). Section 1983 authorizes an injured person to assert a claim for relief against a person who, acting under color of state law, violated the claimant's federally protected rights. See 42 U.S.C. § 1983. To state a claim upon which relief can be granted under § 1983, a plaintiff must allege: (i) a deprivation of a federal right; and (ii) that the person who deprived the plaintiff of that right acted under color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988). The Court has noted:

> [A] plaintiff must establish (1) a violation of rights protected by the federal Constitution or created by federal statute or regulation, (2) proximately caused (3) by the conduct of a "person" (4) who acted under color of any statute, ordinance, regulation, custom[,] or usage, of any State or Territory or the District of Columbia.

Schaefer v. Las Cruces Pub. Sch. Dist., 716 F. Supp. 2d 1052, 1063 (D.N.M. 2010)(Browning, J.)(quoting Summum v. City of Ogden, 297 F.3d 995, 1000 (10th Cir. 2002)).  The Supreme Court of the United States has made clear that, in alleging a § 1983 action against a government agent in the agent's individual capacity, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  Iqbal, 556 U.S. at 676.

The Supreme Court has also clarified that there is no respondeat superior liability under § 1983.  See Iqbal, 556 U.S. at 675 ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.");  Bd. of Cty. Comm'rs v. Brown, 520 U.S. 397, 403 (1997).  An entity cannot be held liable solely on the basis of the existence of an employer-employee relationship with an alleged tortfeasor.  See Monell v. Dep't of Social Servs. of City of New York, 436 U.S. at 689.  Supervisors can be held liable only for their own unconstitutional or illegal policies, and not for their employees' tortious acts.  See Barney v. Pulsipher, 143 F.3d 1299, 1307-08 (10th Cir. 1998).  The Tenth Circuit has recognized that non-supervisory defendants may be liable if they knew or reasonably should have known that their conduct would lead to the deprivation of a plaintiff's constitutional rights by others, and an unforeseeable intervening act has not terminated their liability.  See Martinez v. Carson, 697 F.3d 1252, 1255 (10th Cir. 2012)(quoting 42 U.S.C. § 1983; Trask v. Franco, 446 F.3d 1036, 1046 (10th Cir. 2006))(internal quotation marks omitted).

Before the Supreme Court decided Iqbal, the Tenth Circuit held that supervisors are not liable under § 1983 "unless there is an affirmative link between the constitutional deprivation and the supervisor's exercise of control or direction, his personal participation, or his failure to supervise." Kiesling v. Troughton, 107 F.3d 880, 1997 WL 111256, at *2 (10th Cir. 1997)(unpublished table decision)(citing Meade v. Grubbs, 841 F.2d 1512, 1527 (10th Cir. 1988)). The Tenth Circuit reasoned that, because supervisors can be held liable only for their own constitutional acts or illegal policies, and not for their employees' torts, supervisory liability requires a showing that such policies were a "deliberate or conscious choice." Barney v. Pulsipher, 143 F.3d at 1307-08 (citations and internal quotation marks omitted). Cf. Bd. of Cnty. Comm'rs v. Brown, 520 U.S. 397, 404 (1997)("[I]t is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality. The plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged.")(emphasis in original).

The Tenth Circuit has recognized that Iqbal limited, but did not eliminate, supervisory liability for government officials based on an employee's or subordinate's constitutional violations. See Garcia v. Casuas, 2011 WL 7444745, at *25-26 (D.N.M. 2011)(Browning, J.)(citing Dodds v. Richardson, 614 F.3d 1185, 1199(10th Cir. 2010)). The language that may have altered the landscape for supervisory liability in Iqbal is as follows: "Because vicarious liability is inapplicable to. . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Iqbal, 556 U.S. at 676. The Tenth Circuit in Dodds v. Richardson held:

> Whatever else can be said about Iqbal, and certainly much can be said, we conclude the following basis of § 1983 liability survived it and ultimately resolves this case: § 1983 allows a plaintiff to impose liability upon a defendant-supervisor who creates, promulgates, implements, or in some other way possesses

responsibility for the continued operation of a policy the enforcement (by the defendant-supervisor or her subordinates) of which "subjects, or causes to be subjected" that plaintiff "to the deprivation of any rights . . . secured by the Constitution . . . ."

614 F.3d at 1199.  The Tenth Circuit noted, however, that "*Iqbal* may very well have abrogated § 1983 supervisory liability as we previously understood it in this circuit in ways we do not need to address to resolve this case."  Dodds v. Richardson, 614 F.3d at 1200.  It concluded that Iqbal did not alter "the Supreme Court's previously enunciated § 1983 causation and personal involvement analysis."  Dodds v. Richardson, 614 F.3d at 1200.  More specifically, the Tenth Circuit recognized that there must be "an 'affirmative' link . . . between the unconstitutional acts by their subordinates and their 'adoption of any plan or policy . . . -- express or otherwise -- showing their authorization or approval of such misconduct."  Dodds v. Richardson, 614 F.3d at 1200-01.  The specific example that the Tenth Circuit used to illustrate this principle was Rizzo v. Goode, 423 U.S. 362 (1976), where the plaintiff sought to hold a mayor, a police commissioner, and other city officials liable under § 1983 for constitutional violations that unnamed individual police officers committed.  See Dodds v. Richardson, 614 F.3d at 1200 (quoting Rizzo v. Goode, 423 U.S. at 371).   The Tenth Circuit noted that the Supreme Court in that case found a sufficient link between the police misconduct and the city officials' conduct, because there was a deliberate plan by some of the named defendants to "crush the nascent labor organizations."  Dodds v. Richardson, 614 F.3d at 1200 (quoting Rizzo v. Goode, 423 U.S. at 371).   See Young v. City of Albuquerque, 77 F. Supp. 3d 1154, 1186-87 (D.N.M. 2014)(Browning, J.)(holding that the plaintiff failed to state a § 1983 claim against a city because "there is no indication that a municipal policy caused [a constitutional] violation"); Herrera v. Santa Fe. Pub. Sch., 41 F. Supp. 3d 1188, 1252 (D.N.M. 2014)(Browning, J.)(explaining that

"[a] municipality will not be held liable under § 1983 solely because its officers inflicted injury").

**LAW REGARDING THE NMTCA**

The New Mexico Legislature enacted the NMTCA, because it recognized "the inherent unfair and inequitable results which occur in the strict application of the doctrine of sovereign immunity." N.M. Stat. Ann. § 41-4-2A. The New Mexico Legislature, however, also recognized

> that while a private party may readily be held liable for his torts within the chosen ambit of his activity, the area within which the government has the power to act for the public good is almost without limit, and therefore government should not have the duty to do everything that might be done.

N.M. Stat. Ann. § 41-4-2A. As a result, it was "declared to be the public policy of New Mexico that governmental entities and public employees shall only be liable within the limitations of the Tort Claims Act and in accordance with the principles established in that act." N.M. Stat. Ann. § 41-4-2A. The NMTCA is also "based upon the traditional tort concepts of duty and the reasonably prudent person's standard of care in the performance of that duty." N.M. Stat. Ann. § 41-4-2C.

1. **Section 41-4-4(A).**

The NMTCA's § 41-4-4(A), which grants immunity and authorizes exceptions thereto, states:

> A governmental entity and any public employee while acting within the scope of duty are granted immunity from liability for any tort except as waived by the New Mexico Religious Freedom Restoration Act [N.M. Stat. Ann. §§ 28-22-1 to 28-22-5] and by Sections 41-4-5 through 41-4-12 NMSA 1978. Waiver of this immunity shall be limited to and governed by the provisions of Sections 41-4-13 through 41-4-25 NMSA 1978, but the waiver of immunity provided in those sections does not waive immunity granted pursuant to the Governmental Immunity Act.

N.M. Stat. Ann. § 41-4-2A. Accordingly, a plaintiff may not sue a New Mexico governmental

entity or its employees or agents, unless the plaintiff's cause of action fits within one of the exceptions that the NMTCA grants for governmental entities and public employees. See N.M. Stat. Ann. §§ 41-4-5 through 41-4-12. See also Begay v. State, 1985-NMCA-117, ¶ 10, 723 P.2d 252, 255 ("Consent to be sued may not be implied, but must come within one of the exceptions to immunity under the Tort Claims Act."), rev'd on other grounds by Smialek v. Begay, 1986-NMSC-049, ¶ 10, 721 P.2d 1306 (1986). A plaintiff also may not sue a governmental entity or its employees for a damage claim arising out of violations of rights under the New Mexico Constitution unless the NMTCA contains a waiver of immunity. See Barreras v. N.M. Corr. Dep't, 2003-NMCA-027, ¶ 24, 62 P.3d 770, 776 ("In the absence of affirmative legislation, the courts of this state have consistently declined to permit individuals to bring private lawsuits to enforce rights guaranteed by the New Mexico Constitution, based on the absence of an express waiver of immunity under the Tort Claims Act."); Chavez v. City of Albuquerque, 1998-NMCA-004, ¶ 11, 952 P.2d 474, 477 (noting that a plaintiff cannot seek damages for violations of rights under the New Mexico Constitution against a city, its employees, or its agents unless the NMTCA waives immunity); Rubio v. Carlsbad Mun. Sch. Dist., 1987-NMCA-127 ¶¶ 11-12, 744 P.2d 919, 922 (holding that no waiver of immunity exists for damages arising out of alleged educational malpractice claim against a school board); Begay v. State, 1985-NMCA-117, ¶ 14, 723 P.2d at 257 (finding that no waiver exists in the NMTCA for suit under Article II, § 11 of the New Mexico Constitution). Accordingly, if no specific NMTCA waiver can be identified, a plaintiff's complaint against the governmental entity or its employees must be dismissed. See Begay v. State, 1985-NMCA-117, ¶ 14, 723 P.2d at 255. Further, the NMTCA is the

> exclusive remedy against a governmental entity or public employee for any tort
> for which immunity has been waived under the Tort Claims Act and no other

> claim, civil action or proceeding for damages, by reason of the same occurrence,
> may be brought against a governmental entity or against the public employee or
> his estate whose act or omission gave rise to the suit or claim.

N.M. Stat. Ann. § 41-4-17(A).  A plaintiff thus "may not sue a New Mexico governmental entity, or its employees or agents, unless the plaintiff's cause of action fits within one of the exceptions to immunity that the NMTCA grants." Pueblo of Pojoaque v. New Mexico, 214 F. Supp. 3d 1028, 1087 (D.N.M. 2016)(Browning, J.)("Pojoaque").  "A plaintiff also may not sue a governmental entity or its employees for a . . . damages claim arising out of violations of rights under the New Mexico Constitution unless the NMTCA contains a waiver of immunity." Pojoaque, 214 F. Supp. 3d at 1087.  "Thus, if no specific waiver can be found in the NMTCA, a plaintiff's complaint [for damages] against the governmental entity or its employees must be dismissed."   Salazar v. City of Albuquerque, 2013 WL 5554185 at *24 (D.N.M. 2013)(Browning, J.)(citing Begay v. State, 1985-NMCA-117, ¶ 10, 723 P.2d at 255).

###           2.          Section 41-4-6.

N.M. Stat. Ann. § 41-4-6 exempts from immunity "liability for damages resulting from bodily injury, wrongful death or property damage caused by the negligence of public employees while acting within the scope of their duties in the operation or maintenance of any building, public park, machinery, equipment or furnishings."  N.M. Stat. Ann. § 41-4-6.  This exception balances the principle that "government should not have the duty to do everything that might be done" with the desire "to compensate those injured by the negligence of public employees and to impose duties of reasonable care." Cobos v. Doña Ana County Hous. Auth., 1998-NMSC-049, ¶ 6, 970 P.2d 1143, 1145 (citations and internal quotations omitted).  To resolve the tension between these two goals, § 41-4-6 "grant[s] governmental entities and employees a general immunity from tort liability, [and] waives that immunity in certain defined circumstances."

Cobos v. Doña Ana County Hous. Auth., 1998-NMSC-049, ¶ 6, 970 P.2d at 1145 (alterations added). The Supreme Court of New Mexico has explained that, "[w]hile 41-4-6 may appropriately be termed a 'premises liability' statute, the liability envisioned by that section is not limited to claims caused by injuries occurring on or off certain 'premises,' as the words 'machinery' and 'equipment' reveal." Cobos v. Doña Ana County Hous. Auth., 1998-NMSC-049, ¶ 9, 970 P.2d at 1146 (alteration added). Section 41-4-6 "contemplate[s] waiver of immunity where due to the alleged negligence of public employees an injury arises from an unsafe, dangerous, or defective condition on property owned and operated by the government . . . ." Bober v. New Mexico State Fair, 1991-NMSC-031, ¶ 27, 808 P.2d 614, 623 (alterations original)(internal quotation marks and citation omitted). New Mexico courts have concluded that § 41-4-6's waiver of immunity does not extend to negligent supervision, see Pemberton v. Cordova, 1987-NMCA-020, ¶ 5, 734 P.2d 254, 256, negligent design, see Rivera v. King, 1988-NMCA-093, ¶¶ 30-35, 765 P.2d 1187, 1194, negligent inspection, see Martinez v. Kaune, 1987-NMCA-131, ¶ 9, 745 P.2d 714, 716-17, or negligent classification of a prison inmate, see Archibeque v. Moya, 1993-NMSC-079, ¶¶ 11-14, 866 P.2d at 348.

In the prison context, the Supreme Court of New Mexico has held that "[t]he 'operation' and 'maintenance' of the penitentiary premises, as these terms are used in 41-4-6, does not include the security, custody, and classification of inmates . . . . Section 41-4-6 does not waive immunity when public employees negligently perform such administrative functions." Archibeque v. Moya, 1993-NMSC-079, ¶ 8, 866 P.2d at 347 (alterations added)(citations omitted). In Archibeque v. Moya, Chris Archibeque, an inmate at the Central New Mexico Correction Facility, was transferred to the New Mexico State Penitentiary in Santa Fe, New Mexico. See 1993-NMSC-079, ¶ 2, 866 P.2d at 346. Before being released into general

population, a prison intake officer, Moya-Martinez, met with Archibeque to discuss whether he had any known enemies within the prison's general population. See 1993-NMSC-079, ¶ 2, 866 P.2d at 346. Archibeque informed Moya-Martinez that another inmate, Gallegos, was one of his enemies, and Moya-Martinez, without checking an available list of current inmates, informed Archibeque that Gallegos was no longer at the prison. See 1993-NMSC-079, ¶ 2, 866 P.2d at 346. He was released into general population, and Gallegos assaulted him that night. See 1993-NMSC-079, ¶ 2, 866 P.2d at 346. Archibeque sued Moya-Martinez, other corrections officers, and the New Mexico Corrections Department in federal court for violations under 42 U.S.C. § 1983 and under the NMTCA. See 1993-NMSC-079, ¶ 3, 866 P.2d at 346. The district court interpreted § 41-4-6 narrowly, and held that the statute did not waive immunity for negligent security and custody of inmates at the penitentiary. See 1993-NMSC-079, ¶ 4, 866 P.2d at 346. Thereafter, Archibeque's § 1983 claims were resolved in favor of Moya-Martinez and the other corrections employees. See 1993-NMSC-079, ¶ 4, 866 P.2d at 346. The federal district court denied Archibeque's motion for reconsideration. See 1993-NMSC-079, ¶ 4, 866 P.2d at 346. Archibeque appealed, and the Tenth Circuit certified a question to the Supreme Court of New Mexico:

> Does [NMSA 1978, Section 41-4-6] of the New Mexico Tort Claims Act, [NMSA 1978, Sections 41-4-1 to -29], provide immunity from tort liability to an employee of the state penitentiary whose alleged negligence in releasing a prisoner into the general prison population, which included known enemies of the prisoner, resulted in the prisoner being beaten and injured by one of his enemies?

1993-NMSC-079, ¶ 1, 866 P.2d at 345-46 (alterations original). Archibeque argued that Moya–Martinez was participating in the operation of the penitentiary when she classified Archibeque as an inmate who could safely be released into the general prison population, and he argued that Moya-Martinez' alleged negligence in misclassifying him and releasing him into the general

population constituted negligent operation of the penitentiary, thereby waiving immunity under §

41-4-6.  See 1993-NMSC-079, ¶ 5, 866 P.2d at 346-47.  The Supreme Court of New Mexico

concluded that § 41-4-6 did not waive Moya-Martinez' immunity, stating that "[t]he 'operation'

and 'maintenance' of the penitentiary premises, as these terms are used in Section 41-4-6, does

not include the security, custody, and classification of inmates."  1993-NMSC-079, ¶ 6, 866 P.2d

at 347 (alteration added).  The Supreme Court of New Mexico reasoned that Moya-Martinez was

not operating and maintaining the prison's physical premises when she negligently classified

Archibeque.  See 1993-NMSC-079, ¶ 8, 866 P.2d at 347.  Rather, the Supreme Court of New

Mexico explained that

> [Moya-Martinez] was performing an administrative function associated with the
> operation of the corrections system.  Section 41-4-6 does not waive immunity
> when public employees negligently perform such administrative functions.  To
> read Section 41-4-6 as waiving immunity for negligent performance of
> administrative functions would be contrary to the plain language and intended
> purpose of the statute.

1993-NMSC-079, ¶ 8, 866 P.2d at 347 (alteration added)(citation omitted).  The Supreme Court

of New Mexico further explained:

> While Moya-Martinez's misclassification of Archibeque put him at risk, the
> negligence did not create an unsafe condition on the prison premises as to the
> general prison population.  Reading Section 41-4-6 to waive immunity every time
> a public employee's negligence creates a risk of harm for a single individual
> would subvert the purpose of the Tort Claims Act, which recognizes that
> government, acting for the public good, "should not have the duty to do
> everything that might be done," and limits government liability accordingly.

1993-NMSC-079, ¶ 8, 866 P.2d at 348 (quoting N.M. Stat. § 41-4-2(A))(citation omitted).

According to the Supreme Court of New Mexico, to permit a waiver of immunity under § 41-4-6

whenever injury results from a negligently performed administrative task "would undermine the

purpose of the Tort Claims Act by subjecting the State to liability for virtually any mistake made

during the administration of corrections facilities that results in injury to an inmate."  1993-

NMSC-079, ¶ 14, 866 P.2d at 349. The Supreme Court of New Mexico noted that, "[w]hile a segment of the population at risk might justify waiver of immunity under Section 41-4-6, a situation in which a single inmate is put at risk is not comparable." 1993-NMSC-079, ¶ 14, n.3, 866 P.2d at 349 n.3. The Honorable Richard Ransom, then-Chief Justice of the Supreme Court of New Mexico, in his concurring opinion, noted:

> I concur because there was no showing that the general prison population reflected anything but the reasonable and expected risks of prison life. The classification of Archibeque did not change the condition of the premises. I see Archibeque's injuries as having been proximately caused by a discrete administrative decision. As an alternative to releasing Archibeque into the general population, he could have been placed in administrative segregation, a form of protective custody. The risk arose not from a condition of the premises (as with the wild dogs in Castillo [v. County of Santa Fe, 1988-NMSC-037, 755 P.2d 48] or, arguably, the inadequate health care facilities in Silva [v. State, 1987-NMSC-107, 745 P.2d 380]); it arose from the classification itself.

Archibeque v. Moya, 1993-NMSC-079, ¶ 17, 866 P.2d at 350 (Ransom, C.J., concurring).

In Callaway v. New Mexico Department of Corrections, 1994-NMCA-049, ¶ 19, 875 P.2d 393, 398, the Court of Appeals of New Mexico concluded that the plaintiff had "stated a claim sufficient to waive immunity under Section 41-4-6," because the New Mexico Corrections Department "knew or should have known that roaming gang members with a known propensity for violence had access to potential weapons in the recreation area, that such gang members created a dangerous condition on the premises of the penitentiary, and that the danger to other inmates was foreseeable." 1994-NMCA-049, ¶ 19, 875 P.2d at 399. The Court of Appeals of New Mexico additionally noted, in "support for [its] holding[,]" that the "inmate assailant was unusually dangerous and the prison authorities had knowledge of the danger posed by the inmate." 1994-NMCA-049, ¶ 19, 875 P.2d at 399 (alterations added). See Lymon v. Aramark Corp., 728 F. Supp. 2d 1222, 1251-56 (D.N.M. 2010)(Browning, J.), aff'd, 499 F. App'x 771 (10th Cir. 2012); C.H. v. Los Lunas Sch. Bd. of Educ., 852 F. Supp. 2d 1344, 1358-59 (D.N.M.

2012)(Browning, J.)(holding that allegations of negligence against the Defendants fell within the § 41-4-6 waiver, in part, because the Plaintiff "adequately allege[d] that the Defendants knew or should have known of the dangerous condition").

**3.    Section 41-4-16.**

Section 41-4-16 provides:

A.  Every person who claims damages from the state or any local public body under the Tort Claims Act shall cause to be presented to the risk management division for claims against the state, the mayor of the municipality for claims against the municipality, the superintendent of the school district for claims against the school district, the County clerk of a county for claims against the County, or to the administrative head of any other local public body for claims against such local public body, within ninety days after an occurrence giving rise to a claim for which immunity has been waived under the Tort Claims Act, a written notice stating the time, place and circumstances of the loss or injury.

B.  No suit or action for which immunity has been waived under the Tort Claims Act shall be maintained and no court shall have jurisdiction to consider any suit or action against the state or any local public body unless notice has been given as required by this section, or unless the governmental entity had actual notice of the occurrence. The time for giving notice does not include the time, not exceeding ninety days, during which the injured person is incapacitated from giving the notice by reason of injury.

N.M. Stat. Ann. § 41-4-16(A)-(B).   "[D]efendants have the burden of proving that the notice requirement was not met."  Dutton v. McKinley Cty. Bd. of Com'rs, 1991-NMCA-130, ¶ 7, 822 P.2d 1134, 1135.   "[T]he law is now firmly established that the notice required 'is not simply actual notice of the occurrence of an accident or injury but rather, actual notice that there exists a 'likelihood' that litigation may ensue.'"  Dutton, 1991-NMCA-130, ¶ 9, 822 P.2d at 1136 (quoting Frappier v. Mergler, 1988-NMCA-021, ¶ 11, 752 P.2d 253, 256).   Mere awareness that an accident involving a state employee is insufficient to put a governmental entity on notice under § 41-4-16(A).   See Powell v. N.M. State Highway and Transp. Dep't, 1994-NMCA-035, ¶ 15, 872 P.2d 388, 392 (stating that "where virtually every employee was aware of occurrence,

but not of likelihood of litigation, such knowledge held insufficient to comply with notice requirement of section 41-4-16" and "where both mayor and chief of police were aware of occurrence, but not that litigation might result, or that the plaintiff considered accident to be fault of the defendants, actual notice held not provided.")(citing Dutton, 1991-NMCA-130, ¶ 9, 822 P.2d at 1136;  Frappier v. Mergler, 1988-NMCA-021, ¶¶ 15-16, 752 P.2d at 256-57).

Nor does actual notice under Section 41-4-16(B) require that the notice of a claim indicate that a lawsuit will in fact be filed against the state, but rather, that the state must be given notice of a likelihood that litigation may ensue, in order to reasonably alert the state to the necessity of investigating the merits of the potential claim.

Callaway v. N.M. Dep't of Corr., 1994-NMCA-049, ¶ 6, 875 P.2d 393, 396.  The Court has noted that "[p]roper notice under the NMTCA appears to be jurisdictional."  Todd v. Montoya, 877 F. Supp. 2d 1048, 1102 n.60 (D.N.M. 2012)(Browning, J.).  See Coffey v. United States, 2011 WL 2729068, at *6 (D.N.M. 2011)(Browning, J.)("Because the notice provisions of the NMTCA are jurisdictional . . . New Mexico courts have narrowly construed whether actual notice of the likelihood of litigation has been given to the proper entity.").


## ANALYSIS

The Court concludes that: (i) Bernalillo County's Motion should not be converted into one for summary judgment, because Bernalillo County's attached documents fit an exception to the general rule; (ii) Bernalillo County does not enjoy quasi-judicial immunity from damages, because the doctrine protects people, not counties; and (iii) Bernalillo County is not liable for Gallegos' federal constitutional claims, because there is no vicarious liability in § 1983 actions. The Court further concludes that: (iv) Gallegos does not meet the NMTCA's notice requirement, because he did not provide Bernalillo County with written notice, and because Bernalillo County did not have actual notice.  Because the NMTCA notice requirement is jurisdictional, and

Gallegos does not meet it, the Court has no jurisdiction to consider whether the NMTCA waives Bernalillo County's immunity.

## I.  BERNALILLO COUNTY'S MOTION SHOULD NOT BE CONVERTED INTO A MOTION FOR SUMMARY JUDGMENT.

Generally, the sufficiency of a complaint must rest on its contents alone.  See Casanova v. Ulibarri, 595 F.3d 1120, 1125 (10th Cir. 2010); Gossett v. Barnhart, 139 F. App'x 24, 24 (10th Cir. 2005)(unpublished)("In ruling on a motion to dismiss, the district court is limited to the facts pled in the complaint.").  There are, however, three limited exceptions to this general principle: (i) documents that the complaint incorporates by reference, see Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. at 322; (ii) "documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity," Jacobsen v. Deseret Book Co., 287 F.3d at 941; and (iii) "matters of which a court may take judicial notice," Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. at 322.  "[T]he court is permitted to take judicial notice of its own files and records, as well as facts which are a matter of public record."  Van Woudenberg v. Gibson, 211 F.3d at 568. "Ordinarily, consideration of material attached to a defendant's answer or motion to dismiss requires the court to convert the motion into one for summary judgment . . . ."  Tal v. Hogan, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006).  "However, facts subject to judicial notice may be considered in a Rule 12(b)(6) motion without converting the motion to dismiss into a motion for summary judgment."  Tal v. Hogan, 453 F.3d at 1264 n.24.

Here, Bernalillo County's use of documents outside of the pleadings do not convert its Motion into one for summary judgment. Bernalillo County attaches several exhibits to its Motion, all of which are state district court orders.  See Motion at 5-6 (citing Order Remanding Defendant to Metropolitan Detention Center, filed January 6, 2017 (Doc. 45-1); Order of

Consolidation, filed January 6, 2017 (Doc. 45-2); Plea and Disposition Agreement, filed January 6, 2017 (Doc. 45-3); Order Revoking Probation, filed January 6, 2017 (Doc. 45-4); Judgment, Sentence, and Order Suspending Sentence, filed January 6, 2017 (Doc. 45-5)). It is true that Gallegos' Amended Complaint does not explicitly incorporate by reference or explicitly refer to all of the court orders attached to the Motion. See Complaint ¶ 5, at 2; Amended Complaint ¶¶ 5-7, at 2. All of the court orders, however, fit the third exception, namely, "matters of which a court may take judicial notice." Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. at 322. A court may take judicial notice "of its own files and records, as well as facts which are a matter of public record." Van Woudenberg v. Gibson, 211 F.3d at 568. In Pace v. Swerdlow, 519 F.3d 1067, 1072 (10th Cir. 2008), the parties disputed, as in this case, whether the Tenth Circuit should treat the district court's ruling as a grant of a motion to dismiss or a grant of a motion for summary judgment, because the district court considered evidence outside of the pleadings. The district court treated the issue before it as a motion to dismiss, holding that "[t]he court can also take judicial notice of all the materials in the state court's file." 211 F.3d at 1072. The Tenth Circuit affirmed this ruling, holding that "[t]he district court was correct in considering these materials on a motion to dismiss under Fed. R. Civ. P. 12(b)(6)." 211 F.3d at 1072.

Here, the state district court orders attached to the Motion are part of the state court's file. The Court may therefore take judicial notice of them. See Pace v. Swerdlow, 519 F.3d at 1072. Because the Court may take judicial notice of them, they fit the third exception to the general rule that a complaint's sufficiency must rest on its contents alone. See Casanova v. Ulibarri, 595 F.3d at 1125. The Court will therefore not convert Bernalillo County's Motion into one for summary judgment.

## II.   **BERNALILLO COUNTY DOES NOT ENJOY QUASI-JUDICIAL IMMUNITY.** [4]

Bernalillo County does not enjoy quasi-judicial immunity, because the doctrine protects people and not entities.  Quasi-judicial immunity's purpose is to protect the officials who execute court orders, as well as prosecutors, grand jurors, witnesses, and agency officials, "for acts intertwined with the judicial process."  Valdez, 878 F.2d at 1287.  "To force officials performing ministerial acts intimately related to the judicial process to answer in court every time a litigant believes the judge acted improperly is unacceptable.  Officials must not be called upon to answer for the legality of decisions which they are powerless to control."  Valdez, 878 F.2d at 1288-89.  An entity, however, such as Bernalillo County, acts via people "to perform ministerial acts intimately related to the judicial process," that is, to execute court orders.  Valdez, 878 F.2d at 1288-89. The doctrine's purpose, therefore, is to protect individuals and not entities such as counties.

Further, the major Tenth Circuit cases regarding quasi-judicial immunity all discuss the doctrine in the context of people and not of entities.  See Valdez, 878 F.2d at 1286 (applying quasi-judicial immunity to two individuals).  Moss applies the doctrine to sheriff's deputies.  See 559 F.3d at 1163.  Importantly, in that case, a county had also been sued, yet the Tenth Circuit did not discuss whether quasi-judicial immunity could apply to the county.  See 559 F.3d at

---

[4]As a threshold matter, "municipal entities and local governing bodies are not entitled to the traditional common law immunities for § 1983 claims. That is, unlike various government officials, municipalities (e.g., local officials in their official capacity and counties, among others) do not enjoy absolute immunity from suit under § 1983."  Moss, 559 F.3d at 1168 (internal citation omitted).  "[C]ities and counties are not immune from suit in federal court under § 1983."  Jackson v. New Mexico Pub. Def's. Office, 361 F.App'x 958, 963 (10th Cir. 2010)(unpublished).   The Court previously ruled that Defendant New Mexico Corrections Department enjoys sovereign immunity and Eleventh Amendment immunity in this case.  See Gallegos v. Bernalillo Cty. Bd. of Comm'rs, No. CIV 16-0127, 2017 WL 3575883, at *34 (D.N.M. 2017)(Browning, J.).  Bernalillo County, however, does not enjoy the same immunity. See Moss, 559 F.3d at 1168.

1168-70.  Finally, <u>Turney</u> applied the doctrine in the context a public hospital superintendent.
<u>See</u> 898 F.2d at 1472-74.

The Supreme Court has also focused the doctrine on individuals.  <u>See</u> <u>Imbler v. Pachtman</u>, 424 U.S. 409, 430-31 (1976)(applying the doctrine to prosecutors); <u>Briscoe v. Lahue</u>, 460 U.S. 325, 344 (1983)(applying the doctrine to witnesses).

In short, because the purpose of quasi-judicial immunity is to protect people, and because the Tenth Circuit has applied the doctrine only in the context of people, not entities, the Court concludes that Bernalillo County does not enjoy quasi-judicial immunity.  Bernalillo County acts only through people.  If those people make mistakes, they are entitled to immunity -- either qualified or absolute -- but that immunity does not extend to the entities they serve.

## III.  BERNALILLO COUNTY IS NOT LIABLE FOR GALLEGOS' FEDERAL CONSTITUTIONAL CLAIMS.

Bernalillo County is not liable for Gallegos' federal constitutional claims.  The Supreme Court has clarified that there is no respondeat superior liability under § 1983.  <u>See</u> <u>Iqbal</u>, 556 U.S. at 675 ("Because vicarious liability is inapplicable to  . . .  § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").  An entity cannot be held liable solely on the basis of the existence of an employer-employee relationship with an alleged tortfeasor.  <u>See</u> <u>Monell v. Dep't of Social Servs. of City of New York</u>, 436 U.S. at 689.  The Tenth Circuit has recognized that <u>Iqbal</u> limited, but did not eliminate, supervisory liability for government officials based on an employee's or subordinate's constitutional violations.  <u>See</u> <u>Garcia v. Casuas</u>, 2011 WL 7444745, at *25-26 (D.N.M. 2011)(Browning, J.)(citing <u>Dodds v. Richardson</u>, 614 F.3d at 1199).  The Tenth Circuit in <u>Dodds v. Richardson</u> held:

Whatever else can be said about <u>Iqbal</u>, and certainly much can be said, we

conclude the following basis of § 1983 liability survived it and ultimately resolves
this case: § 1983 allows a plaintiff to impose liability upon a defendant-supervisor
who creates, promulgates, implements, or in some other way possesses
responsibility for the continued operation of a policy the enforcement (by the
defendant-supervisor or her subordinates) of which "subjects, or causes to be
subjected" that plaintiff "to the deprivation of any rights . . . secured by the
Constitution . . . ."

614 F.3d at 1199. More specifically, the Tenth Circuit recognizes that there must be "an

'affirmative link' . . . between the unconstitutional acts by their subordinates and their 'adoption

of any plan or policy . . . -- express or otherwise -- showing their authorization or approval of

such misconduct.'" Dodds v. Richardson, 614 F.3d at 1200-01.

Here, Gallegos does not plead that Bernalillo County "create[ed], promulgate[ed],

implement[ed], or in some other way possesse[d] responsibility for the continued operation of a

policy" that harmed him. Dodds v. Richardson, 614 F.3d at 1199. Nor does Gallegos plead that

any "affirmative link" exists between the John Does who allegedly ignored the court titration

order, and Bernalillo County's "adoption of any plan or policy" authorizing the John Does to

ignore the court order. 614 F.3d at 1199. Gallegos' only relevant allegations are that the

titration order "was ignored and Plaintiff was transported to Central New Mexico Correctional

Facility where Plaintiff suffered life threatened withdrawal symptoms," that "Defendants John

Doe 1 through 5 acted with deliberate indifference . . . when they ignored a court order," and that

"[t]he Defendant John Doe's acted with deliberate indifference to the Plaintiff inmate in refusing

to follow the court order and refusing to allow him to continue in the methadone program until

his level of dependency was decreased to a safe level." Amended Complaint ¶¶ 7, 15, 16 at 2-3.

None of these allegations establish an "affirmative link" between the John Does and any

Bernalillo County policy. Nor do any of them mention a Bernalillo County policy, or that

Bernalillo County policy is unconstitutional or illegal. The Court thus concludes that the County

is not liable for Gallegos' federal constitutional claims.

In essence, Gallegos is alleging that Bernalillo County has a good, helpful policy -- the methadone program to help him dry out -- and that he wanted to take advantage of that policy before he was sent to the New Mexico Corrections Department.[5]  <u>See</u> Amended Complaint ¶ 5, at 2.  In other words, there is really nothing wrong with the policy.  Rather, the problem is that a Bernalillo County official did not follow the policy in this one instance.  <u>See</u> Amended Complaint ¶¶ 12, 15, 16, at 3.  That isolated failure to follow a good policy does not properly allege a <u>Monell v. Dep't of Social Servs. of City of New York</u> claim against Bernalillo County. <u>See</u> <u>Monell v. Dep't of Social Servs. of City of New York</u>, 436 U.S. at 689.

## IV.    <u>GALLEGOS DID NOT SATISFY THE NMTCA'S NOTICE REQUIREMENT.</u>[6]

Gallegos did not provide Bernalillo County with proper written notice of his NMTCA

---

[5]According to an article from the Journal of Substance Abuse Treatment:

> In the United States, few jail or prison inmates receive medication assisted treatment for opioid use disorder during incarceration.  In 2008, fewer than 2000 prisoners, less than 0.1% of the total prison population, received buprenorphine or methadone.  Though 28 state prison systems report offering methadone, over half limit treatment to select populations, such as pregnant women or individuals with chronic pain.  Major reasons for not offering medication during incarceration include strict federal laws governing administration of [medicated assisted treatment], preference for drug free detoxification, as well as ideological opposition to [medication assisted treatment].

Jeronimo A. Maradiaga, Shadi Nahvi, Chinazo O. Cunningham, Jennifer Sanchez, & Aaron D. Fox, "'I Kicked the Hard Way. I Got Incarcerated.' Withdrawal from Methadone During Incarceration and Subsequent Aversion to Medicated Assisted Treatments," J. SUBST. ABUSE TREAT. 62:49-54 (2016), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC4888768/ (last viewed June 21, 2017)(alterations added).

[6]The Court has dismissed all of the federal claims against Bernalillo County.  In this situation, the Court would not normally exercise supplemental jurisdiction over the state claims.  <u>See</u> 28 U.S.C. § 1367(c)(3)(stating that district courts may consider whether to exercise supplemental jurisdiction when "the district court has dismissed all claims over which it has original jurisdiction").  The Court has, however, entered an Order allowing Gallegos to amend his Complaint to add claims against BCMDC guards.  For this reason, the Court will decide the state law claims against Bernalillo County, because it still has federal-question jurisdiction over an about-to-be-filed § 1983 claim against new Defendants.

claims, nor did Bernalillo County have actual notice of them. NMTCA § 41-4-16(A) provides:

> Every person who claims damages from . . . any local public body under the Tort Claims Act shall cause to be presented to the risk management division for claims against the state . . . the county clerk of a county for claims against the county . . . within ninety days after an occurrence giving rise to a claim for which immunity has been waived under the Tort Claims Act, a written notice stating the time, place and circumstances of the loss or injury.

If this notice requirement is not met,

> [n]o suit or action for which immunity has been waived under the Tort Claims Act shall be maintained and no court shall have jurisdiction to consider any suit or action against . . . any local public body unless notice has been given as required by this section, or unless the governmental entity had actual notice of the occurrence.

N.M. Stat. Ann. § 41-4-16(B). In short, if a plaintiff wishes to sue a county under the NMTCA, he or she must provide written notice to the county clerk, or the county must have actual notice.

Because the notice requirement is jurisdictional, the Court must determine whether it has jurisdiction under rule 12(b)(1), because "district courts have an independent obligation to address their own subject-matter jurisdiction and can dismiss actions sua sponte for a lack of subject-matter jurisdiction." City of Albuquerque v. Soto Enterprises, Inc., 864 F.3d 1089, 1093 (10th Cir. 2017). While Bernalillo County styles its Motion as one under rule 12(b)(6), it cannot obviate the Court's jurisdictional inquiry with how it titles its motions. Thus, the Court must treat this portion of the 12(b)(6) Motion first as one under (12)(b)(1).

When making a rule 12(b)(1) motion, a party may go beyond the allegations in the complaint to challenge the facts upon which jurisdiction depends, and may do so by relying on affidavits or other evidence properly before the court. See New Mexicans for Bill Richardson v. Gonzales, 64 F.3d 1495, 1499 (10th Cir. 1995); Holt v. United States, 46 F.3d 1000, 1003 (10th Cir. 1995). In those instances, a court's reference to evidence outside the pleadings does not necessarily convert the motion to a rule 56 motion for summary judgment. See Holt v. United

States, 46 F.3d at 1003 (citing <u>Wheeler v. Hurdman</u>, 825 F.2d 257, 259 n.5 (10th Cir. 1987)).

Here, Gallegos did not provide Bernalillo County with written notice, nor did Bernalillo County have actual notice. Gallegos provided the required written notice to the Risk Management Division of the New Mexico General Services Department for his claim against the state.[7] <u>See</u> Complaint at 4. This Motion, however, pertains to Bernalillo County and not to the state.

There is no record or allegation of Gallegos providing the required written notice to "the County clerk of [Bernalillo] [C]ounty for claims against the County." N.M. Stat. Ann. § 41-4-16(B). Further, in his Response, Gallegos does not allege that he provided written notice to Bernalillo County; rather, he contends that he provided written notice only to the state. <u>See</u> Response at 12. Gallegos therefore does not meet the NMTCA's written notice requirement.

Further, there is not sufficient evidence -- a preponderance of the evidence -- showing that Bernalillo County had actual notice. "[T]he law is now firmly established that the notice required 'is not simply actual notice of the occurrence of an accident or injury but rather, actual notice that there exists a 'likelihood' that litigation may ensue.'" <u>Dutton</u>, 1991-NMCA-130, ¶ 9, 822 P.2d at 1136 (quoting <u>Frappier v. Mergler</u>, 1988-NMCA-021, ¶ 11, 752 P.2d at 256).

> Nor does actual notice under Section 41-4-16(B) require that the notice of a claim indicate that a lawsuit will in fact be filed against the state, but rather, that the state must be given notice of a likelihood that litigation may ensue, in order to reasonably alert the state to the necessity of investigating the merits of the potential claim.

<u>Callaway v. N.M. Dep't of Corr.</u>, 1994-NMCA-049, ¶ 6, 875 P.2d. at 396. Here, Bernalillo County did not have actual notice. That Gallegos showed the titration order to County employees and that the Bernalillo County employees allegedly ignored it merely gave Bernalillo

---

[7]The Court previously dismissed the state from this action. <u>See</u> <u>Gallegos v. Bernalillo Cty. Bd. of Comm'rs</u>, 2017 WL 3575883, at *1.

County notice of an "occurrence of an accident or injury," and not "notice of a likelihood that litigation may ensue." Dutton, 1991-NMCA-130, ¶ 9, 822 P.2d at 1136 (quoting Frappier v. Mergler, 1988-NMCA-021, ¶ 11, 752 P.2d at 256); Callaway v. N.M. Dep't of Corr., 1994-NMCA-049, ¶ 6, 875 P.2d. at 396. See Amended Complaint ¶¶ 5-7, at 2. Detention facilities are filled with occurrences of encounters between prisoners and guards on a daily basis. Prisoners do not like a number of these encounters, but they often move on, not filing a grievance or a complaint. In the detention facility or prison context, actual notice requires more than notice of the incident itself, or else the actual notice requirement becomes meaningless.

Another possible assertion of actual notice in Gallegos' pleadings is his allegation that the "Plaintiff gave oral notice of such action both by himself and through his court appointed attorney." Amended Complaint ¶ 9, at 2. This statement does not satisfy Iqbal's pleading requirements. "[P]leading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action" is insufficient. Iqbal, 556 U.S. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. Simply stating that the "Plaintiff gave oral notice" is the definition of a "threadbare recital[] of the elements of a cause of action." Gallegos needs to provide details of when this occurred, to whom notice was given, and of what that notice contained. Because Gallegos' statement is insufficient under Iqbal's pleading requirements, it is insufficient to establish that Bernalillo County had actual notice under the NMTCA's notice requirement.

Attached to Gallegos' Response are deposition transcript excerpts. See Deposition of Martin Gallegos (taken January, 18, 2017), filed January 30, 2017 (Doc. 52-7)("Gallegos Depo."). In the transcript, referencing a conversation he had with Corrections Officer Javonne

King, he states: "[W]e did get into an argument over this because I did, in fact, tell her that I had this court order and that she needed to call somebody . . . and let them know that I had a court order to stay in [BCMDC] until I lower my dosage." Gallegos Depo. at 69:20-25. King responded with "I don't give a s---." Gallegos Depo. at 4:25-5:1. Gallegos then said, "I'm going to contact my attorney and file a lawsuit against you guys." Gallegos Depo. at 5:1-6. Later, Gallegos mentioned the court order to a nurse, who said "I don't know why they are taking you. This is bad." Gallegos Depo. at 72:5-6. Gallegos then "tried to bring it up to the lieutenant or the officer that was there that day and they didn't want to hear it." Gallegos Depo. at 72:10-12.

In short, Gallegos told three people about the court order and told one person that he was going to sue them. Later, however, Gallegos partially recanted his statement about filing a lawsuit. In the deposition transcript, Gallegos was asked: "It says here you were going to contact a lawyer is what you told them. But in your affidavit it doesn't say anything about you telling them you were going to file a lawsuit, does it?" Gallegos Depo. at 77:5-8. Gallegos responded with: "No, I don't." Gallegos Depo. at 77:9. Instead, Gallegos simply makes clear that he had made his lawyer aware of the situation. See Gallegos Depo. at 77:10-12. That Gallegos told one guard that he was going to call his lawyer, without more, is not "'actual notice that there exists a 'likelihood' that litigation may ensue.'" Dutton, 1991-NMCA-130, ¶ 9, 822 P.2d at 1136 (quoting Frappier v. Mergler, 1988-NMCA-021, ¶ 11, 752 P.2d at 256).

Douglas Wilber's affidavit describes the only other possible instance in which Bernalillo County may have had actual notice. See Affidavit of Douglas Wilber (dated November 23, 2015), filed January 30, 2017 (Doc. 52-5)("Wilber Aff."). Mr. Wilber, who then represented Gallegos, had "a recollection of having a phone call with someone from the medical staff at [BCMDC], though I cannot remember exactly when or a name, I believe it was a male." Wilber

Aff. ¶ 4, at 2. Mr. Wilber states: "I recall that this staff member was aware of the methadone issue and the order, and did not believe Mr. Gallegos should be transported so quickly given his methadone levels at the time." Wilber Aff. ¶ 5, at 2. "[T]he law is now firmly established that the notice required 'is not simply actual notice of the occurrence of an accident or injury but rather, actual notice that there exists a 'likelihood' that litigation may ensue.'" <u>Dutton</u>, 1991-NMCA-130, ¶ 9, 822 P.2d at 1136 (quoting <u>Frappier v. Mergler</u>, 1988-NMCA-021, ¶ 11, 752 P.2d at 256). That this unnamed BCMDC staff member "was aware of the methadone issue and the order" shows that he had "actual notice of the occurrence of an accident or injury," but not "that there exists a 'likelihood' that litigation may ensue." <u>Dutton</u>, 1991-NMCA-130, ¶ 9, 822 P.2d at 1136 (quoting <u>Frappier v. Mergler</u>, 1988-NMCA-021, ¶ 11, 752 P.2d at 256). The Court cannot soundly conclude, by a preponderance of the evidence, that Bernalillo County had actual notice of the occurrence under the NMTCA.[8]

    **IT IS ORDERED** that Defendant Bernalillo County Board of County Commissioners' Motion to Dismiss, filed January 6, 2017 (Doc. 45), is granted.

_____
UNITED STATES DISTRICT JUDGE

---

[8]While the Court, having found that it does not have jurisdiction over Gallegos' claims against Bernalillo County, must put down its pen and refrain from deciding the merits issue, the Court notes that it is unlikely that Gallegos will be able to shoehorn his claim into the NMTCA's premises liability waiver of sovereign immunity, because Gallegos does not complain about Bernalillo County's detention facility policies or rules; instead, his claim stems from an isolated incident where Bernalillo County's good policies were not followed. <u>See</u> <u>Lymon v. Aramark Corp.</u>, 728 F. Supp. 2d at 1267 (stating that the NMTCA's premises liability waiver does not apply when an administrative error, such as a misclassification, places a single inmate at risk).

*Counsel:*

Stephen F. Lawless
Grisham & Lawless, P.A.
Albuquerque, New Mexico

      *Attorneys for the Plaintiff*

Carlos M. Quiñones
Quiñones Law Firm
Santa Fe, New Mexico

      *Attorneys for Defendants Bernalillo County Board of County*
        *Commissioners and Bernalillo County Metropolitan Detention Center*

Debra J. Moulton
Deborah D. Wells
Kennedy, Moulton & Wells P.C.
Albuquerque, New Mexico

      *Attorneys for Defendant New Mexico Department of Corrections*